FILED

2021 Sep-30  PM 04:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**WE CARE HEATING & AIR, LLC,**

　　　**Plaintiff,**

**v.**

**WECARE POOLS, LLC,**

　　　**Defendant.**

**Case No. 2:19-cv-01911-CLM**

### MEMORANDUM OPINION

We Care Heating & Air, LLC ("We Care Heating") sues WeCare Pools, LLC ("WeCare Pools") for trademark infringement, trade dress infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1501 *et seq.* (Counts I–III), injunctive relief (Count IV), and trademark infringement/unfair competition under Alabama common law (Counts V and VI).

Both parties filed motions for summary judgment. WeCare Pools moves for summary judgment on all counts (doc. 41), and We Care Heating moves for summary judgment on all counts except for Count VI, common law unfair competition (doc. 42). For the reasons stated within, the court will **GRANT IN PART** and **DENY IN PART** WeCare Pools' motion for summary judgment (doc. 41) and **DENY** We Care Heating's motion for summary judgment (doc. 42). This case will proceed to trial on Counts I-V.

## STATEMENT OF THE FACTS

We Care Heating's business: We Care Heating has operated since 2014. It provides heating, ventilation, and air conditioning ("HVAC") services to residential and commercial clients in the Southeast. The parties dispute how often We Care Heating provides pool services. According to We Care Heating's interrogatory responses and testimony from two of its owners, Matthew Collins ("Collins") and Richard Simons ("Simons"), and a service manager, Michael Rucker ("Rucker"), We Care Heating's HVAC services include pool heater services. Doc. 42-7 at 13 (38:7-11), 84-85; Doc. 42-8 at 17 (54:11-55:3); Doc. 42-9 at 16 (64:1-6). But an archived version of We Care Heating's website from about three weeks before this lawsuit was filed does not list pool-related services as one of the services We Care Heating provided. Doc. 41-10 at 2-3. And We Care Heating has never serviced a pool heater in Alabama.

We Care Heating has retail stores in Florida and Georgia. Though not registered to do business in Alabama, We Care Heating performed work in Phenix City, Alabama in March 2017. Doc. 42-7 at 6 (12:2-13), 11-12 (33:10-34:7); Doc. 42-12, ¶ 12.

We Care Heating's trademarks and trade dress: We Care Heating owns federally registered trademarks in connection with HVAC contractor services for the

word mark "WE CARE HEATING & AIR" (Reg. No. 5,865,022) and the following design mark:



(Reg. No. 5,865,023).

The "WE CARE" element of the word mark is not unique. On March 16, 2021, the United States Patent and Trademark Office ("PTO") Trademark Electronic Search System showed 243 live trademark registrations containing the words "We Care." Doc. 41-2. The Georgia Secretary of State's business search database showed 63 active businesses with names containing some variation of "We Care" or "WeCare." Doc. 41-4. And the Alabama Secretary of State's business search database showed 43 existing businesses with names containing some variation of "We Care" or "WeCare." Doc. 41-5. Of course, the phrase "HEATING & AIR" is not unique, and We Care Heating disclaimed those words apart from its marks. Doc. 42-2 at 2; Doc. 42-3 at 2.

We Care Heating's trade dress consists of "a bubblegum pink color with black lettering, including the words WE CARE with a pink 'cancer' ribbon with the ribbon being a darker pink shade from the same color palette as the bubblegum pink

background." Doc. 42-12, ¶ 16. We Care Heating displays its trade dress on its website, social media, other marketing materials, and trucks, such as the following:



*Id.*

WeCare Pools' business and marks: WeCare Pools formed under the laws of Alabama on March 5, 2019. It provided pool maintenance and consultation services and sold pool-related items to customers in the Birmingham, Alabama area. It had a retail store in Birmingham, Alabama. It has not operated since the death of one of its members, Jason Mote ("Mote"), in November 2020.

WeCare Pools used these designs and variations of it in conducting business:



Doc. 41-14 at 88, 92, 107. WeCare Pools also used the following truck:

4



Doc. 41-12 at 6.

WeCare Pools displayed its logos and trade dress on trucks, its website, flyers sent to customers within three miles of its store in Birmingham, and Google advertisements. According to one of the owners of WeCare Pools, Michael Smith ("Smith"), Google showed its advertisements only to customers within eight miles of the WeCare Pools store in Birmingham. Doc. 41-15 at 16-17 (61:17-62:13).

<u>We Care Heating discovers alleged infringement</u>: While We Care Heating was exploring expansion into Alabama, one of its former clients informed Collins that she saw WeCare Pools' logo in a store front and mistakenly believed that We Care Heating had opened a pool and spa company in Birmingham. Doc. 42-16 at 2. Collins testified that someone also reported seeing WeCare Pools' truck at a casino and mistakenly believed it to be one of We Care Heating's trucks driven by John Ussery ("Ussery"). Doc. 42-7 at 26-27 (93:8-94:3). And We Care Heating's warehouse manager, Billy Stephens ("Stephens"), testified that his friend sent him pictures of a WeCare Pools truck in Alabama, mistakenly believing it to be one of

We Care Heating's trucks, and asked if the company was moving into Alabama. Doc. 42-10 at 9 (22:3-20).

We Care Heating's counsel then sent Mote a cease-and-desist letter demanding that WeCare Pools stop using its allegedly infringing marks. Doc. 42-21. This lawsuit followed.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the moving party shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it is one that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In turn, to avoid summary judgment, the nonmoving party must go beyond mere allegations to offer specific facts creating a genuine issue for trial. *Id.* at 324. Moreover, the court must view the evidence and draw all inferences in the light most favorable to the nonmoving party. *Centurion Air Cardgo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1149 (11th Cir. 2005). When no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## ANALYSIS

We Care Heating raises six claims: trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) (Count I); trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count III); injunctive relief, asking the court to permanently enjoin WeCare Pools from infringing We Care Heating's trademarks (Count IV); trademark infringement under Alabama common law (Count V); and unfair competition under Alabama common law (Count VI).

Below, the court starts by jointly evaluating the Lanham Act and common law trademark infringement and related claims (Counts I, III, and V) because each of those claims requires We Care Heating to prove a likelihood of confusion between the two parties' marks. The same 'likelihood of confusion' analysis applies to all three claims, so the court evaluates whether a genuine issue of likely confusion exists for any of those claims together. The court then analyzes the claims for trade dress infringement (Count II), injunctive relief (Count IV), and common law unfair competition (Count VI).

## I.  <u>Counts I, III, and V</u>: Trademark Infringement, False Designation of Origin, and Unfair Competition

### A. Applicable Law

> *1. Count I: Trademark infringement under Section 32(1) of the Lanham Act*

A person infringes a federally registered trademark when he:

> without the consent of the registrant, . . . use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a). To prevail on a claim under § 32(1), a plaintiff must show that the defendant used the plaintiff's mark in commerce without consent and in a way that was likely to cause confusion. *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008).

> *2. Count III: Trademark infringement, false designation of origin, and unfair competition under Section 43(a) of the Lanham Act*

Section 43(a) of the Lanham Act forbids infringement of unregistered marks, false designation of the origin of goods or services, and unfair competition. 15 U.S.C. § 1125(a); *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010). To prevail on a claim for trademark infringement, false designation of origin, or unfair competition, a plaintiff must prove: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the

same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Id.* (internal quotation marks omitted).

### 3. Count V: Common law trademark infringement

Alabama common law provides a cause of action for trademark infringement. *See Fuqua v. Roberts*, 110 So. 2d 886, 887 (Ala. 1959); *Arthur Young, Inc. v. Arthur Young & Co.*, 579 F. Supp. 384, 389 (N.D. Ala. 1983). "'The test for the state-law infringement claim under Alabama common law is [the] same as it is under the Lanham Act.'" *Way Int'l v. Church of the Way Int'l*, No. 7:15-CV-370-RDP, 2017 WL 432466, at *9 (N.D. Ala. Feb. 1, 2017) (quotations omitted).

### 4. Likelihood of confusion

As you can see, each claim requires We Care Heating to prove a likelihood of confusion. And the same analysis governs the likelihood of confusion element for each claim. *See Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (trademark infringement under Section 32(1)); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012) (trademark infringement, false designation of origin, and unfair competition under Section 43(a)); *Alfa Corp.*, 560 F. Supp. 2d at 1175 (common law trademark infringement).

Courts in the Eleventh Circuit consider seven factors to determine the likelihood of confusion: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and

customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Aronowitz*, 513 F.3d at 1239. A district court must "fully consider the seven factors, . . . evaluate the weight to be accorded the individual factors, which varies with the circumstances of the case, and then make its ultimate decision only after doing so." *J-B Weld Co., LLC v. Gorilla Glue Co.*, 978 F.3d 778, 794 (11th Cir. 2020) (internal quotation marks omitted). So the court first explains how to analyze each factor; then the court does the analysis.

1. <u>Type of mark</u>: The type of mark, also called the strength or distinctiveness of the mark, is one of the most important likelihood of confusion factors. *Aronowitz*, 513 F.3d at 1239. "Trademark law distinguishes four gradations of distinctiveness of marks, in descending order of strength: fanciful or arbitrary, suggestive, descriptive, and generic." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). An arbitrary or fanciful mark "bears no logical relationship to the product or service it is used to represent" and is therefore the most distinctive. *Id.* A suggestive mark "refers to some characteristic of the goods, but requires a leap of the imagination to get from the mark to the product." *Id.* at 1357-58. A descriptive mark "identifies a characteristic or quality of the service or product." *Id.* at 1358. And a generic mark, which is not entitled to trademark protection, is "a particular genus or class of which an individual article or service is but a member," a "term by which the product or service itself is commonly known," or a depiction of "the

product or service as a whole, rather than any particular feature, quality, or characteristic of the whole." *Id.* (internal quotation marks and emphasis omitted).

Courts must determine the strength of a trademark by viewing the trademark as a whole, including any generic, descriptive, or disclaimed portions. *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 362-63 (11th Cir. 1997). Moreover, "where, as in this case, a mark has been registered with the PTO, there is a rebuttable presumption that the mark is protectable or distinctive." *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020) (internal quotation and alteration marks omitted). So "in order to successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark is *not* distinctive." *Id.* (emphasis in original). That evidence can be evidence of "extensive third-party use of the mark" that diminishes the strength of the mark. *Fla. Int'l*, 830 F.3d at 1257.

2. <u>Similarity of the marks</u>: This factor requires courts "to compare the plaintiff's marks with the defendant's marks and measure their similarity." *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1186 (11th Cir. 2015). When evaluating the similarity of marks, "the court must consider the overall

impression created by the marks, including a comparison of the appearance, sound and meaning of the marks, as well as the manner in which they are displayed." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 939 (11th Cir. 2010).

3. <u>Similarity of the products or services the marks represent</u>: This factor considers "whether the products [or services] are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products [or services] of the respective parties." *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1338 (11th Cir. 1999). The question "is not whether there is a distinguishing characteristic, but whether the goods are so related that a consumer would believe that a single producer made both." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1168 (11th Cir. 2019).

4. <u>Similarity of the parties' retail outlets and customers</u>: This factor considers "where, how, and to whom the parties' products are sold," because "[d]issimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion." *Frehling*, 192 F.3d at 1339 (internal quotation marks omitted). The parties do not have to be in direct competition to cause a likelihood of confusion. *Id.* Similarly, "[t]he parties' outlets and customer bases need not be identical, but some degree of overlap should be present." *Id.*

5. <u>Similarity of advertising media</u>: This factor "compares the parties' advertisements and the audiences they reach." *Sovereign Mil.*, 809 F.3d at 1188. The parties' advertisements need not be identical to cause confusion; instead, "the standard is whether there is likely to be significant enough overlap in the audience of the advertisements that a possibility of confusion could result." *Fla. Int'l*, 830 F.3d at 1262 (internal quotation and alteration marks omitted).

6. <u>The defendant's intent</u>: This factor "asks whether the defendant adopted its mark with the intent of deriving benefit from the reputation of the plaintiff." *Sovereign Mil.*, 809 F.3d at 1188 (internal quotation marks omitted). This factor "alone may be enough to justify the inference that there is confusing similarity." *Fla. Int'l*, 830 F.3d at 1263. In examining the defendant's intent, the court must determine whether the defendant "had a conscious intent to capitalize on the plaintiff's business reputation, was intentionally blind, or otherwise manifested improper intent" when the defendant used its mark. *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 648 (11th Cir. 2007) (internal quotation and alteration marks omitted).

7. <u>Actual confusion</u>: Evidence of actual confusion—*e.g.*, a customer believing that the defendant's product came from the plaintiff—is the best evidence of a likelihood of confusion. *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir. 1983). In reviewing evidence of actual confusion, "there are no set rules as to how much evidence of confusion is needed; rather, a district court must

take into consideration the circumstances surrounding each particular case." *Lone Star*, 122 F.3d at 1382. "Relevant circumstances include the extent of the parties' advertising, the length of time for which the allegedly infringing product has been advertised, or any other factor that might influence the likelihood that actual confusion would be reported." *J-B Weld*, 978 F.3d at 793. The court must look "not only to the existence" of actual confusion, "but also to the extent of such confusion." *Tana*, 611 F.3d at 779.

### B. Application to We Care Heating's Trademark Infringement, False Designation of Origin, and Unfair Competition Claims

Having explained the analysis, the court now evaluates the likelihood of confusion by applying the seven factors discussed above.

1. <u>Type of mark</u>: The evidence supports a reasonable inference that We Care Heating's marks are suggestive. "HEATING & AIR" by itself is generic because it identifies only a service. And the court cannot disregard those words simply because We Care Heating disclaimed them from its registration. *See Lone Star*, 106 F.3d at 362-63. That said, the marks as a whole are not generic because "WE CARE HEATING & AIR" is not a service. The marks are not descriptive because "WE CARE" and the dominant features of the design mark do not "identif[y] a characteristic or quality of" HVAC or "HEATING & AIR" services. *See Welding Servs.*, 509 F.3d at 1358. Instead, the marks "refer[] to some characteristic of the [services]"—either that the company performs them with care or for charity—and it

14

"requires a leap of the imagination" to connect the marks with HVAC services. *See id.; see also Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1533 (4th Cir. 1984) ("Pizzeria Uno" to be a suggestive mark); *Ewe Grp., Inc. v. Bread Store, LLC*, 54 F. Supp. 3d 1343, 1349 (N.D. Ga. 2014) ("SWEET HUT" and "SWEET HUT BAKERY & CAFE DESIGN" to be suggestive marks in connection with a bakery).

In addition, We Care Heating's marks are presumptively distinctive because We Care Heating registered them with the PTO. So a reasonable jury could find that We Care Heating's marks are very strong.

That said, a reasonable juror could find We Care Heating's marks less distinctive because of expansive third-party use of the words "We Care"—the 243 other trademark registrations and several business names in Georgia and Alabama including those words—and the ribbon commonly used as a symbol for breast cancer awareness. "We Care" and the ribbon are, of course, only part of We Care Heating's entire registered marks, but the extensive third-party use of those elements at least shows that the "strength of mark" factor does not heavily favor We Care Heating.

2. <u>Similarity of the marks</u>: We Care Heating's marks and WeCare Pools' marks are very similar. Both word marks use the phrase "WE CARE" followed by words identifying the services offered. Both design marks consist of the wording "WE CARE" in small capitals style, solid black color, and possibly identical font. The "WE CARE" in both designs is directly above and slightly offset from a solid

black rectangle. The rectangle in both designs contains white italicized text in all-capital letters. Both designs incorporate a ribbon; many of WeCare Pools' designs use a multi-colored puzzle piece style ribbon, but at least one design uses a pink ribbon just like We Care Heating's design mark. The size and arrangement of the various design elements—the text, the rectangle, and the ribbon—are nearly identical in both designs. And although some of WeCare Pools' designs have a blue or pink background, at least one of WeCare Pools' designs has a white or transparent background just like We Care Heating's design mark. These striking similarities weigh heavily in favor of We Care Heating.

3. <u>Similarity of the products or services the marks represent</u>: The evidence supports a reasonable inference that the parties provide different and non-competing goods and services. We Care Heating provides HVAC services and WeCare Pools provided pool maintenance and consultation services and sold pool-related items. The parties' marks communicate different services: We Care Heating's marks offer "HEATING & AIR" services and WeCare Pools' marks offer "POOLS & SPAS" services. Evidence shows that We Care Heating's website from before this lawsuit did not list pool-related services as one of the services it provided. And though there is a dispute over whether We Care Heating services pool heaters, no evidence suggests that We Care Heating provides any other kind of pool service. This

evidence favors finding that the public would not attribute the parties' goods and services to a single source.

That said, there is conflicting evidence of some overlap between the parties' services. We Care Heating and its owners and managers testified that the company services pool heaters. This evidence favors finding that We Care Heating's HVAC services include pool services and that the public might attribute both parties' services to a single source.

4. Similarity of the parties' retail outlets and customers: The same evidence showing that WeCare Pools offers different services than We Care Heating also shows that the parties have different customers. And WeCare Pools maintained a retail store only in Birmingham, Alabama, while We Care Heating maintained retail stores only in Georgia and Florida. What's more, We Care Heating has never serviced a pool heater in Alabama, and the Secretary of State of Alabama has not qualified We Care Heating to do business in Alabama. This evidence supports a reasonable inference that the parties do not have similar retail outlets or customers.

At the same time, the evidence showing that We Care Heating also offers pool heater services could show that the parties target, though perhaps do not reach, the same customers. In addition, We Care Heating performed at least one job in Alabama in March 2017. Again, there is at least some evidence of overlap.

5. <u>Similarity of advertising media</u>: Both parties advertised on their websites, Google ads, Facebook, and trucks. But WeCare Pools specifically directed its advertising exclusively to customers in the Birmingham, Alabama area, while no evidence shows that We Care Heating targeted advertisements specifically at customers in Alabama. From this evidence, a reasonable jury could find that the parties used similar methods of advertising but reached different audiences.

6. <u>The defendant's intent</u>: We Care Heating concedes for purposes of summary judgment only that "the defendant's intent" factor is either neutral or favors WeCare Pools. Doc. 46 at 34. Indeed, the evidence does not show that WeCare Pools adopted its marks to benefit from We Care Heating's reputation, and this factor favors WeCare Pools.

7. <u>Actual confusion</u>: The record contains evidence of three instances of actual confusion. First, one of We Care Heating's customers saw WeCare Pools' logo in a store front in Alabama and mistakenly believed that We Care Heating was opening a store there. Second, someone reported seeing WeCare Pools' truck at a casino and mistakenly thought it was We Care Heating's truck. Third, Stephens testified that his friend texted him pictures of WeCare Pools' truck and asked if We Care Heating was moving into Alabama. So the actual confusion factor favors We Care Heating.

WeCare Pools disputes the truck sightings as evidence of actual confusion, doc. 51 at 16, and has moved to strike the portions of We Care Heating's brief that

discuss the truck sightings, doc. 52. First, WeCare Pools seeks to cast doubt on the truck sighting at the casino because Collins did not know whether the casino was in Alabama or another state, doc. 42-7 at 27 (94:4-14), and Collins and Ussery provided different accounts of who allegedly saw the truck at the casino and who reported the sighting to Collins, *id.* at 26-27 (93:8-94:15), 28 (101:18-21), doc. 42-11 at 10 (26:12-22). Second, WeCare Pools challenges the evidentiary weight of Stephens's testimony because Stephens could not recall where in Alabama his friend lived or when he received the pictures. Doc. 42-10 at 9 (23:22-24:2, 25:8-23). Third, WeCare Pools asserts that the court should disregard evidence of the texts from Stephens's friend because this evidence consists of either inadmissible hearsay or unauthenticated text messages. Doc. 52 at 1-4.

Even if those challenges bear on the credibility of the witness's testimony, they do not show a lack of a genuine dispute of actual confusion because people still reported seeing WeCare Pools' truck and believed it to be We Care Heating's truck. And "otherwise admissible evidence" may "be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996). After reviewing the evidence that Stephens's friend texted him about seeing a WeCare Pools truck, the court finds that We Care Heating could reduce this evidence into admissible form at trial. In any event, WeCare Pools does not dispute that a WeCare Pools' sign

confused a We Care Heating customer. So even if the court disregarded the truck sightings, the actual confusion factor would still favor We Care Heating.

* * *

Having considered all seven factors, the court finds that a reasonable juror could find that WeCare Pools used a strikingly similar variation of We Care Heating's marks in a way that likely caused confusion over whether WeCare Pools is an affiliate of We Care Heating. Evidence of the strength of We Care Heating's marks, the remarkable similarities between We Care Heating's and WeCare Pools' marks, We Care Heating's pool heater services, and the instances of actual confusion would support a finding of a likelihood of confusion.

On the other hand, a reasonable juror could find that WeCare Pools used marks resembling We Care Heating's marks in a way that was unlikely to cause confusion. Evidence of the explicit distinction between services displayed in the parties' marks; expansive third-party use of the words "We Care" and the awareness ribbon; differences between the services, stores, customers, and advertising audience of the parties; and the lack of intent to exploit We Care Heating's reputation supports a finding of no likelihood of confusion. So there's a genuine issue of material fact that precludes summary judgment on Counts I, III, and V.

## II. Count II: Trade Dress Infringement

### A. Applicable Law

Section 43(a) of the Lanham Act provides a cause of action for trade dress infringement. 15 U.S.C. § 1125(a)(1), (3). Trade dress "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986). To succeed on a claim for trade dress infringement, a plaintiff must prove three elements: "(1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) its trade dress is primarily non-functional; and (3) the defendant's trade dress is so similar to the plaintiff's that it is likely to cause confusion." *J-B Weld*, 978 F.3d at 788 (internal quotation marks omitted).

1. Inherently Distinctive: Trade dress is "inherently distinctive" under the first element if its "intrinsic nature serves to identify a particular source." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210 (2000) (internal quotation marks omitted). Trade dress that is not inherently distinctive can become distinctive if it acquires "secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Id.* (internal quotation and alteration marks omitted). To evaluate the distinctiveness of a trade dress, courts in the Eleventh Circuit consider, among other

factors, whether the trade dress is "a common basic shape or design, whether it is unique or unusual in a particular field, and whether it is a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods." *AmBrit*, 812 F.2d at 1536 (internal alteration marks omitted).

2. <u>Non-functional</u>: A feature of trade dress is nonfunctional under the second element if it is not "essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 165 (1995) (internal quotation marks omitted).

3. <u>Likely to confuse</u>: Finally, courts analyze the likelihood of confusion between trade dresses according to the same factors used to evaluate the likelihood of confusion between trademarks. *J-B Weld,* 978 F.3d at 789.

**B. Application to We Care Heating's Trade Dress Infringement Claim**

Plaintiff We Care Heating moves for summary judgment on all three elements, while Defendant WeCare Pools seeks summary judgment only on the likely to confuse element. As explained below, neither party is entitled to summary judgment because there are genuine issues of material fact as to the inherent distinctiveness and likelihood of confusion elements.

1. <u>Inherently Distinctive</u>: Evidence supports a reasonable inference that We Care Heating's trade dress is inherently distinctive or acquired secondary meaning as identifying We Care Heating as the source of HVAC services. This evidence includes the distinctive features of We Care Heating's trade dress used since 2015 that do not describe a product or service (*i.e.*, the words "WE CARE," the pink background and black lettering, the pink ribbon, and the pink trucks). It also includes We Care Heating's regular use of the trade dress in marketing materials, one person believing that WeCare Pools' sign belonged to We Care Heating, and two people believing that WeCare Pools' pink truck belonged to We Care Heating.

At the same time, evidence of extensive third-party use of the words "We Care" and the pink breast cancer awareness ribbon could support a reasonable jury finding that the public not would consider We Care Heating's trade dress as the identification of a source of services. And the record lacks evidence specific to the business uses of the color pink or pink trucks, either in general or in the HVAC or pool services industries.

2. <u>Likely confusion</u>: In addition, there is a genuine issue of a likelihood of confusion between the parties' trade dresses because a reasonable jury could find in either party's favor on the issue according to these seven factors:

a. *Strength of trade dress*: As explained above when discussing the first element of We Care Heating's trade dress infringement claim, the evidence supports

a reasonable inference that We Care Heating's trade dress is distinctive, either inherently or from secondary meaning, but conflicting evidence supports the opposite reasonable inference that its trade dress is not distinctive. So this factor could weigh in either party's favor.

b. *Similarity of the trade dresses*: The parties' trade dresses and marks share many of the same elements. So the parties' trade dresses are strikingly similar for the same reasons the parties' marks are strikingly similar. And the trade dresses also consist of pink trucks. These too are similar. After all, both parties' trucks are pink and display similar logos. So the similarity of trade dresses factor favors We Care Heating.

c. *Similarity of the services, retail outlets, customers, and advertising media, the defendant's intent, and actual confusion*: These remaining factors apply the same way they applied to We Care Heating's trademark infringement claims. As discussed above, evidence supports a reasonable inference that the parties explicitly communicate different services, provide different services to different customers, do not maintain retail outlets in the same state, and direct advertisements at different audiences. At the same time, evidence that We Care Heating services pool heaters and worked at least once in Alabama could constitute proof of overlap between the parties' services, customers, and public perception. What's more, the record contains

no evidence of the defendant's wrongful intent but contains evidence of three instances of actual confusion.

Having considered the seven likelihood of confusion factors, the court finds that there is a genuine issue whether similarities between the trade dresses likely confused the public. So neither party is entitled to summary judgment.

## III. Count IV: Injunctive Relief

### A. Applicable Law

Section 34(a) of the Lanham Act provides district courts the power "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of the Lanham Act. 15 U.S.C. § 1116(a). In "ordinary trademark infringement actions, . . . complete injunctions against the infringing party are the order of the day." *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1336 (11th Cir. 1996). A plaintiff seeking a permanent injunction must prove: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008). The Lanham Act establishes a

rebuttable presumption that trademark infringement causes irreparable injury for purposes of an injunction. 15 U.S.C. § 1116(a).

### B. Application to We Care Heating's Claim for Injunctive Relief

Here, a genuine issue of whether We Care Heating suffered irreparable injury precludes summary judgment on its claim for injunctive relief. As explained above, a reasonable jury could find that We Care Heating either was or was not the victim of trademark infringement, trade dress infringement, false designation of origin, or unfair competition. By extension, a reasonable jury could find that We Care Heating either did or did not suffer irreparable injury in the form of a Lanham Act or common law violation. So the court will deny summary judgment on the claim for injunctive relief.

## IV. Count VI: Common Law Unfair Competition

### A. Applicable Law

Count VI alleges a violation of "unfair competition under the common law of Alabama." Doc. 1 ¶ 63. But "Alabama law does not recognize the tort of unfair competition." *L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332, 335 (11th Cir. 1987) (citing *City Ambulance of Ala. v. Haynes Ambulance*, 431 So. 2d 537 (Ala. 1983)). Rather, Alabama law recognizes the related cause of action for intentional interference with business relations. *Id.* So the court will analyze Count

VI as a claim for intentional interference with business relations. An actionable claim for intentional interference with business relations requires proof of "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

### B. Application to We Care Heating's Claim

We Care Heating has made no allegations specific to the elements of the intentional interference with business relations tort. And no evidence in the record bears on WeCare Pools' knowledge of We Care Heating's protectible business relationships or intentional interference with those relationships. Because no genuine issues of material fact exist, the court will grant summary judgment for WeCare Pools on Count VI and dismiss that claim with prejudice.

### CONCLUSION

For the reasons stated above, the court will **DENY** Plaintiff We Care Heating's motion for summary judgment (doc. 42) outright. The court will **GRANT IN PART** and **DENY IN PART** Defendant WeCare Pools' motion for summary judgment (doc. 41). The court will grant summary judgment for WeCare Pools only as to Count VI and deny summary judgment on all other claims.

That means Counts I-V will proceed to trial. The court will enter a separate order consistent with this memorandum opinion.[1]

**DONE** on September 30, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[1] We Care Heating moved to strike WeCare Pools' opposition to We Care Heating's motion for summary judgment because WeCare Pools incorporated by reference 37 undisputed facts from WeCare Pools' brief in support of its motion for summary judgment. Doc. 57. We Care Heating says that this incorporation by reference prejudiced it because: (1) We Care Heating could not be sure of which facts WeCare Pools relied on in its opposition brief; (2) WeCare Pools incorporated these facts to impermissibly exceed the page limitations for its response brief; and (3) We Care Heating could not effectively respond to the 37 incorporated facts and stay within the court's page limitations for its reply brief. The court has independently reviewed the record and determined that genuine disputes of material fact require Counts I-V to proceed to trial. So We Care Heating's motion to strike WeCare Pools' opposition brief is moot.